*Court of Common Pleas, Lebanon County, May 6th, 1857.*

### WENGERT v. MAULFARE ET AL.

A father and son lived together on land of which the former was the tenant; the latter purchased a portion of it from the landlord by a parol agreement, took possession of it, and after a short time had a fence (which was afterwards straightened), run between it and the remainder of the land, and made valuable improvements, with the knowledge of his vendor. This whole property was afterwards recovered back from the vendor upon .an adverse title, which was sustained by the Supreme Court. The vendee then purchased it and took a deed for it from the plaintiff in that suit. A second action of ejectment was brought by the original vendor against the former plaintiff and the vendee, who set up as a defence, his deed, but not his parol title; the land was recovered by the plaintiff, and this judgment also affirmed by the Supreme Court. The vendee, to avoid being turned out of his house, took a parol lease of the property from the original vendor upon receiving assurance from a deputy sheriff, in the former's presence, that it would not affect his title. The lessor then made an agreement with his attorneys to give them one-half of the entire property, without reserving the right of his vendee. The latter's interest was afterwards sold at sheriff's sale, and the purchaser tendered the price originally agreed to be paid to the vendor.

*Held,* That there was such an open and notorious possession in this case, as took it out of the statute of frauds·; and the fact that possession was not taken immediately, and that the fence was afterwards straightened to correct a mistake, made no difference.

*Held, further,* That the fact that the vendee afterwards purchased from the party who recovered in the first action, did not destroy his title; nor that after the trial of the second suit he took a lease from his original vendor.

*Held, further,* That the possession of the vendee under a parol title was a sufficient notice to the purchasers (the attorneys) of all his title.

*Held, further,* That a judgment against the vendee bound all his titles, legal and equitable, that the purchaser at sheriff's sale was entitled to the property, upon tendering the price originally agreed upon, and that delay in offering it was excused by the uncertain nature of the title.

*Held, further,* That neither the fact that the vendor at one time could not have made a title, nor that his title was once destroyed by the recovery in ejectment, will destroy the parol title of the vendee.

*Held, further,* That the failure to set up his parol title by way of defence, did not estop him or those claiming under him from asserting it.

BY THE COURT.—This case has been argued by the counsel on both sides as one of law alone. The facts have not been disputed, but are conceded to be as stated by the witnesses. There are some points in the cause which we should have thought it our duty to submit to the jury, but as both sides ask us to pass on the legal questions without your intervention, we will gratify them by expressing our opinion on the whole case.

The evidence shows that in the winter of 1847-8, John Hean, Jr., who had recently married, was living with his father in a house situated on an acre of ground, part of the lot in dispute. John Hean, Sr., was the tenant of Daniel Maulfare, had rented the house and acre of ground. In the course of the winter, Mr. Maulfare contracted with John Hean, Jr., by parol, to sell him one-half acre of the ground referred to; and the latter, pursuant

[Wengert v. Maulfare et al.]

to the purchase, took possession on the first of April following. At the time of the contract the boundaries were precisely designated. The ground was to extend on the one side to the property of the Union Canal, to bound on the street and alley on both of the ends, and to be divided from the residue of the acre lot by a fence, pointed out and fenced as the boundary, about half way across the lot, and by a continuous line in the precise direction of the fence across the lot to the alley. In our opinion the boundaries were designated with sufficient certainty to enable any one, whether a surveyor or otherwise, to lay off the lot with accuracy, or for a scrivener to draw a deed without any further description. John Hean, Sr., had the whole acre in possession as a garden, orchard, etc., and his son lived with him at the time. It therefore raises the question, was there such a change of possession as will take the case out of the provision of the statute of frauds and perjuries? It is well settled that there must be a change of possession, which must be delivered and taken pursuant to and under the contract; there must be livery of seizin and open and public investiture. I am clearly of the opinion that may be done in regard to property situated like the present, although I could not as to the house in which John Hean, Sr. and Jr., resided. The owner made the contract with John Hean, Jr., agreed to and fixed the boundaries, not including the house, delivered him possession of the ground sold, which is a good part performance of the contract. The son had no lease of the lot, and no possession, actual or constructive, of the part of it agreed to be conveyed. Had it been of the house itself, the law would have been otherwise, but the great objects of the law, a notorious change of possession and investiture by livery, can as well be had in a case like the present as if John Hean, Sr., had not been the tenant of Maulfare. Where the father is the tenant of a farm, and is residing upon it with his family, and one of his sons purchases a portion from the owner, not embracing the domicil, and that part is run off by lines and delivered to the son by the landlord, there is as perfect and notorious a change of possession as though the father was not resident on the land, and had no occupancy as a tenant. The price to be paid for this property was fixed at one hundred and twenty-five dollars. After John Hean, Jr., took possession, in the spring of 1848, he commenced improving the property, built a house and outbuildings, which cost him over eight hundred dollars, moved his family into the house, and resided there till dispossessed in the year 1855, in the manner to which we will hereafter refer.

During the making of these improvements Maulfare resided within one hundred yards, and not only knew what Hean was doing on the premises, but gave every encouragement and facility to construct the building. By arrangement with Hean, and for the benefit of Maulfare, the latter insisted on paying the work-

[Wengert *v.* Maulfare et al.]

men with store goods, and boarded a portion of the hands. The charge for this expenditure was afterwards settled between the parties, and although not paid in full by Hean, yet it was satisfactorily arranged by his paying in part, and giving a note for the residue. The hundred and twenty-five dollars for the lot was not paid, and no precise time for payment was fixed by the contract. Of course the money was to be paid in a reasonable time. The cause of a pretty long delay will be adverted to hereafter. From all of this evidence we consider the sale valid and binding; and that there is sufficient proved to take the case out of the prohibition of the statute, and if there is nothing else in the way, the plaintiff is entitled to recover; for we hold that a purchaser by parol, where the title has passed in equity, can recover when out of possession as readily and with the same force and effect as he can defend against the legal title when in possession.

It has been urged that the money and goods of Maulfare, to a considerable extent, made the improvements on the property in dispute, but the evidence shows clearly that they were not furnished on the credit of the title, but on the personal credit of Hean. He alone was looked to for payment; the settlement was made between the parties as for any other debt, and the obligation of Hean taken. It has no effect on this claim, gives Maulfare no additional equity, and takes away none of Hean's rights.

Before John Hean, Jr., received possession from Maulfare, an action had been commenced by Ashmead against John Hean, Sr., to recover this property on an adverse title. Maulfare was permitted to defend as landlord. The cause was tried at August Term, 1848, and a verdict rendered in favor of the defendants. In 1850 the judgment was reversed, and in November of the same year, the plaintiff in that case recovered. On the 13th of January, 1851, John Hean, Jr., in order to avoid being dispossessed, was obliged to purchase his house and lot from Ashmead, for the sum of $400, and received a deed.

It is said that by this purchase Hean relinquished the title bought from Maulfare, and can never afterwards set it up. We do not think so. He had a right to acquire as many titles, in order to perfect his right, as he thought proper: the purchase of one would not extinguish the other. Suppose the conveyance from Maulfare had been by deed, or written article, it would scarcely be pretended that it was abandoned by this purchase. From the decision of the Supreme Court of the State, Hean had every reason to believe that Ashmead, and not Maulfare, was the legal owner, and he had a right to buy his peace. Maulfare cannot complain; he was no loser by this transaction; on the contrary Hean was, and paid his money because he believed the interest acquired from Maulfare was not sufficient for his protection,

[Wengert v. Maulfare et al.]

although the latter, if worth the amount, was bound to make it good.

In 1853, Maulfare brought suit against Mrs. Ashmead, Uhler, and Hean, to try the title a second time, and obtained a verdict in November of the same year, which was affirmed by the Supreme Court in September, 1854. Before the affirmance a writ of *habere facias* issued, and Maulfare was placed in possession on the 15th of December, 1853. At that time Hean accepted a lease of the premises from the deputy sheriff, who was authorized by Maulfare to take it, and the same was to hold good until the 1st of April following. Before entering into the lease Hean inquired of the deputy sheriff if it would injuriously affect his title from Maulfare, and was told that it would not. This lease was renewed on the first of April for another year. The rent was small, perhaps merely nominal. In the course of the last-mentioned trial it is conceded that the title of Hean from Maulfare was not set up; that no other title was presented as a defence except the deed to Ashmead. The case turned solely on the validity of that deed. It is now said that the equity under the parol purchase was abandoned by not presenting it as a defence in that case; that Hean is barred by accepting the lease, and is postponed in equity from his long delay in paying the purchase-money. It is very certain that the present title was not set up by Hean on the trial referred to, nor was his deed from Ashmead. It is said that he was not even present. Had this title, now in controversy, been presented then as a defence, and passed on by the court and jury, it may admit of question whether the party, or those claiming under him, could now set it up, being a mere equity. But not having been presented then, there is nothing to prevent the right from being investigated now. The main contest at that time was between conflicting opinions of the Supreme Court. If that delivered in the former case of Ashmead v. Maulfare was adhered to, the title of the latter was worthless. If it had been overruled in principle, and was not binding as an authority, it was good; there was no inquiry further. Hean was not bound to present this title as a defence, and the failure so to do cannot be considered an abandonment of it.

Accepting the lease under the circumstances is no bar to a recovery. The agent of the then plaintiff, Maulfare, told him it would not affect his right; it was probably his only means of preventing his family from being turned out in the dead of winter, and was evidently, under all the circumstances, not considered by either party as changing their relative rights. The claim of Hean was fully recognized by Maulfare that winter and the following spring, when he still said that all he wanted or expected from Hean was the payment of his purchase-money, $125. He seems to have repelled with indignation the idea that he was

going to take Hean's property from him, or occupy the house himself, and declared long afterwards that but for the oversight of failing to reserve it when he contracted with his counsel, Hean should have it according to the contract. Even as late as the fall of 1855, he stated the same in substance, and that he would give him the property as he had agreed but for fear of trouble with Messrs. Fisher and Funck. The failure to pay the purchase-money will not postpone the right of Hean. It is very true that a court of equity will not interpose in favor of a party who has shown negligence or backwardness; nothing will call forth its action but a pure equity and a reasonable diligence. It seems to me, however, that this delay is fully accounted for. When the contract was made, no time was fixed for payment; the law would impart that it should be done in a reasonable time, which might be hastened by request. Payment was never urged.

In March, 1848, a suit was brought on an adverse title to recover the property, and a decision had, in August, in favor of Maulfare, which was removed by writ of error, and the title decided to be invalid in July, 1850, and the latter dispossessed in November of that year, when Hean was obliged to pay $400 for the adverse claim. Maulfare, it is true, again recovered in November, 1853, but his right was left in uncertainty until the affirmance of the judgment in September, 1854, and even to this time he could not have had the face to ask Hean for the purchase-money, and never at any time, then or afterwards, demanded it. The whole delay was from that period until the 8th of January, 1856, when the money was tendered. This is, in our opinion, insufficient to postpone Hean's title.

It has been urged by the plaintiff that where a title, commencing by parol, has once vested by delivery of possession and the making of valuable improvements, it cannot be divested without a reconveyance in writing, or redelivery with improvements by the former owner. We do not subscribe to this doctrine by any means, but on the contrary, look upon it as a mere equity, which may be abandoned, surrendered, or lost by negligence, or as it commences in parol may be released by parol.

It is also contended by the defendants that the judgment entered by Hickernel, in 1851, on which the plaintiff's title is founded, was no lien on the equitable, but only on the legal title acquired by Hean from Ashmead. In Pennsylvania, a judgment is a lien on every kind of equitable interest held by the defendant in land, as well as upon legal titles. If Mr. Hean had a dozen titles, part legal, others equitable, all were bound by the judgment, and all passed to the purchaser at sheriff's sale, which transfers every possible interest, legal or equitable.

We have no doubt as to the right of the plaintiff to recover

[Wengert *v.* Maulfare et al.]

against Maulfare, and the next question is in regard to the interest of Messrs. Fisher and Funck.

On the 11th of March, 1854, Maulfare transferred to Fisher and Funck, by deed, one undivided half part of all the property recovered in the ejectment, embracing among others the house and lot in dispute. This was in consideration of professional services rendered. I look upon them as purchasers for value, and the only question is, had they notice, actual or legal, of Hean's claim. If they had, they purchased subject to it, and are in no better situation than Maulfare. If they had not, they will hold the undivided half of the property by virtue of their deed. We have no evidence that they had *actual* notice, but constructive or legal is quite as efficacious in law.

In the present case Hean was living on the land, it is true, at the time, as the tenant of Maulfare, but his possession was notice of every kind of title by which he held; of the lease, the deed from Ashmead, the parol contract, and every other possible interest. The person about to purchase is bound to inquire of the tenant in possession as to the character of his claim. Should any one of the several titles be concealed, or their existence not communicated, it would be postponed, and never could be afterwards set up. Probably the only exception to this rule is where the occupant registers a title; in which case he is confined to it, as a purchaser has a right to presume that he holds under the registered title, and none other.

This doctrine applies most emphatically to a parol sale, as the purchaser, in such case, has no title to register; is therefore guilty of no negligence, and can furnish no other notice than his possession.

Had Mr. Hean set up his deed for Ashmead on the trial, and not spoken of his parol purchase, it might have misled Fisher and Funck, who tried the cause for Maulfare; but it is not pretended that this deed was used. We therefore hold that they had full notice of the present claim, and are in no better situation than Maulfare.

It is further contended that there was a time when Hean could not have recovered from Maulfare; that there was a breach in the continuity of his right, and being once broken, it was gone forever, and Hean driven to an action for the recovery of damages, instead of holding the land.

I confess myself at a loss to precisely understand this course of reasoning. Maulfare's title never was divested. Although at one time decided to be inefficacious, yet it always existed. He acquired no new title on which the after recovery took place; it was by virtue of the right which he held when he sold to Hean. It is true that Hean might have resorted to an action against Maulfare when the title sold by him was decided to be invalid; but he

[Wengert v. Maulfare et al.]

never brought such an action, never claimed damages, never surrendered his right, or even his possession, and has the same claim now, against the same property, held by the same title, that he had at first. Even if Maulfare had afterwards acquired a new and better title to the property, he would have held it as a trustee for Hean, his former vendee.

It is urged that the tender is insufficient, and should have been made to Fisher and Funck as well as to Maulfare. It is probable that a tender to one of two tenants in common is good, but that point need not be determined. The contract was with Maulfare alone, and the purchaser from him is not bound to look to his vendees in making the tender. If those persons purchased with notice of the sale to Hean, they are not in law *bonâ fide* purchasers. If they purchased without notice, they will hold the property; in no event is Hean, or those claiming under him, bound to look beyond the man who contracted to sell the lot, and the tender is good. The money is now in court for the use of the parties who show themselves entitled, and can be distributed according to their respective interests, but the vendee is not bound to look to that distribution.

Two other points were suggested in the argument by the defendants: 1. The possession must be taken immediately on the sale ; and 2. This possession continued to be mixed until the fence was straightened after the recovery by Ashmead and purchase by Hean in the spring of 1851. We do not think that either objection to the title is valid. The contract was made some time in the winter, and possession taken, with the full approbation of Maulfare, on the 1st of April afterwards. This is, in our opinion, no defect ; it is delivered and taken pursuant to the contract. At the time of the purchase there was an offset in the division fence, throwing one more row of apple trees to the purchaser than was included in his purchase; he got possession of all that he contracted for, and that much more, and the property was so held until John Hean, Sr., was turned off in 1851, after Ashmead's recovery, when a new tenant took possession. The fence was then straightened, and placed upon a line. This was no mixed possession, and can have no effect on the title. Although we do not consider it politic to extend the law one jot beyond its present limits in supporting parol sales of land, yet we must pronounce our opinion that in the whole evidence in the case, the plaintiff has made out a perfectly regular title, such as gives him an equitable right to recover the possession of the property in dispute, and therefore your verdict should be in his favor.

To this charge the defendants counsel did except; at their request this exception sealed.

NOTE.—The defendant further assumed the following position : " That to constitute a good, valid, and binding parol contract, such contract must not only

[Wengert *v.* Maulfare et al.]

be. mutual in its inception, but must continue so at all times thereafter, and up to the time it is sought to be enforced by the parol vendee against the parol vendor. That in the case in hand, no such mutuality existed between the parties thereto, after the recovery of Ashmead in the ejectment against Hean, Sr., and Maulfare. That after the recovery, if Maulfare had made a deed, tendered it to Hean, Jr., and demanded the consideration-money, Hean, Jr., would have had the undoubted right to refuse to receive said deed or pay the consideration-money, upon an allegation that the possession under such parol contract had been put an end to by that recovery, and that his parol contract fell with Maulfare's title. And that the mutuality which must legally exist being thus disrupted and put an end to, the parol contract was no longer in existence, nor afterwards resuscitated by any act of John Hean, and never set up by him, or alleged to be in existence until the tender on behalf of Wengert, made to Maulfare on the 8th of January.

To this the court answered : That in legal contemplation, Maulfare's title was always good and valid, although at one time deemed to be vicious, yet that was under a mistake of the law. The law is *never uncertain*, is *always fixed*, and always the same, although sometimes it is a *little* uncertain how it may be determined. Had Mr. Maulfare presented to John Hean, Jr., a deed for the premises, and demanded his money, and the latter had refused payment and set up his title from Ashmead as a defence, it might operate as an estoppel, and bar his recovery now; but had the deed been tendered and money demanded, it is quite possible the one would have been accepted and the other paid. It is very clear, that had Maulfare sued for his money, there could have been no legal defence by Hean, if the title tendered him was good, and the law as now settled declares it to be good. It is to be presumed it would be so declared at all times. This whole position, we think, is fully met and answered in the general charge. Maulfare acquired no new title by the judgment of the court; he remained on his old title, which was always good. Hean's interest never ceased, always remaining the same; mutuality of remedy always existed in contemplation of law. Nay, more, it may be well questioned whether Hean could have defended against an ejectment brought by Maulfare, or been permitted to aver that his title was bad, as he received the possession from him. This answer made part of the charge and embraced within the exception.

This case was reversed by the Supreme Court, on the grounds that the vendee of the land, having failed to set up his parol title to it in the action of ejectment brought by his vendor, neither he, nor the purchaser of his title at sheriff's sale, could afterwards assert it, and that by accepting a lease he abandoned his former title. The rest of the opinion was affirmed (Wengert *v.* Zimmerman, 7 Casey, 401).

*Williamson, for plaintiff.*

*Funck and Fisher, for defendant.*